Etan Z. Lorant, Esq., SBN: 108820
LAW OFFICES OF ETAN Z. LORANT
5850 Canoga Avenue, Suite 400
Woodland Hills, California 91367
Tel:(818) 990-3990
E-mail: Esq8ton@gmail.com

D. Shawn Burkley, Esq., SBN: 310129
D. SHAWN BURKLEY, ATTORNEY-AT-LAW
13701 Riverside Drive, Suite 612
Sherman Oaks, CA 91423
Tel: (818) 268-9858
Fax: (818) 858-1089
E-mail: Shawn@BurkleyHouse.com

Attorneys for Plaintiff,
DROR SOREF

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| DROR SOREF,<br><br>          Plaintiff,<br>vs.<br><br>STATE OF CALIFORNIA;<br>CALIFORNIA DEPARTMENT<br>OF BUSINESS OVERSIGHT<br>(formerly known as the<br>CALIFORNIA DEPARTMENT<br>OF CORPORATIONS);<br>CALIFORNIA DEPARTMENT<br>OF INSURANCE; COUNTY OF<br>LOS ANGELES; JACKIE<br>LACEY, in her Official and<br>Individual Capacities; DAVE<br>JONES, in his Official and<br>Individual Capacities; | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>- 42 USC § 1983 (Unconstitutional Deprivation of Liberty [Monell Theory] False Imprisonment)<br>- 42 USC § 2000d (Disparate Treatment Based on National Origin)<br>- 42 USC § 1985 (Conspiracy to Interfere with Civil Rights)<br>- 42 USC § 1986(Neglect or Refusal to Prevent an Interference with Civil Rights)<br>- 42 USC § 1988 |

JAN LYNN OWEN, in her Official )
and Individual Capacities; RENE )
CARTAYA, in her Official and )
Individual Capacities; BLAINE )
NOBLETT, in his Official and )
Individual Capacities; JUNE J. )
ARAGO (a.k.a. JOJO ARAGO), in )
his Official and Individual )
Capacities; and DOES 1 through )
60, Inclusive, )
                                  )
        Defendants. )
_____ )

PLAINTIFF DROR SOREF (HEREINAFTER REFERRED TO AS "PLAINTIFF") ALLEGES AS FOLLOWS FOR HIS CLAIMS FOR RELIEF HEREIN:

<u>I</u>

**<u>PROCEDURAL ALLEGATIONS AND DEMAND FOR JURY TRIAL</u>**

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1343, and over any supplemental claims for relief arising under state law pursuant to 28 U.S.C. 1367(a). This action alleges multiple deprivations of Plaintiff's civil rights under color of state law brought pursuant to Title 42 U.S.C.§§1983, 1985, 1986, 1988,and 2000d, demanding remedies for damages arising therefrom.By this action, Plaintiff seeks all relief to which he may be entitled, under both state and federal laws, including but not limited to compensatory and punitive damages against the non-governmental defendants, attorneys' fees and costs, and prejudgment interest.

2. Venue lies in this Court pursuant to 28 U.S.C.1391(b)(1) and (2).

3. Plaintiff demands a jury trial.

## II

## GENERAL ALLEGATIONS

**A. PARTIES**

**Plaintiff**

4. **Summary of Plaintiff's Injuries:** Plaintiff Dror Soref was falsely arrested and imprisoned for over 140 days for crimes he did not commit and for which he should have never been charged because, *inter alia*, the statute of limitations had run on the overwhelming number of counts. Furthermore, Plaintiff was intentionally kept falsely imprisoned by Defendants insistence that he was a "flight risk" solely because if his national origin. As a result of the negative publicity engendered by his false arrest and imprisonment, his family and reputation have been destroyed, he is unable to find meaningful employment, and any attempts to rebuild his life have been consistently foiled by the stigma associated with the unproven charges.

5. At all times herein mentioned, Plaintiff DrorSoref ("Plaintiff") is and was a citizen of the United States, residing in the County of Los Angeles, State of California. He is also an Israeli National.  All persons born in Israel are Israeli citizens for life. United States law permits dual citizenship to citizens of Israel and thereforePlaintiff possesses an Israeli passport.

6. Plaintiff is the father of three children all of whom are citizens of the United States.

7. Prior to his illegal arrest and confinement, Plaintiff was a successful and award-winning filmmaker who began his career directing music videos for "Weird Al" Yankovic, which helped establish the rock parodist as a major star. Following his success in music videos, Plaintiff directed *Platinum Blonde*, an inspirational short that was nominated for the *Gold Hugo Award* for Best Short Film at the Chicago International Film Festival. As a result of his work on *Platinum Blonde,* Plaintiff was retained under contract to develop, write, and direct film projects at Paramount Pictures Corporation ("Paramount"). With the help of Paramount, *The Seventh Coin* became Plaintiff's debut as a feature film writer/director. *The Seventh Coin*, starring Peter O'Toole, won awards at the Philadelphia Film Festival (Best First Time Director), and Worldfest Houston (Silver Award).

8. Plaintiff maintained a 25-year business relationship with Paramount, wherein Plaintiff founded and served as Chief Executive Officer of "Orbit Productions."

9. Under Plaintiff's direction, Orbit Productions became one of Hollywood's fastest growing TV commercial production companies at the time, serving companies such as Ford Motor Company, Coca-Cola Corporation and FujiFilm Holdings Corporation. Plaintiff also continued his work as a director and producer, including directing episodes of the hit children's television series "Power Rangers" and co-producing the Columbia Pictures feature length film "Basic" (starring John Travolta and Samuel L. Jackson).

Complaint for Damages

10.     Released theatrically in 2009, Plaintiff wrote and directed the critically-acclaimed thriller *Not Forgotten*, starring Simon Baker, Paz Vega and Chloe Moretz. The film was selected for a Special Screening at the Slamdance Film Festival, and was accorded rave reviews by *The Hollywood Reporter* and *Variety*. It was nominated for the Saturn Award by the Academy of Science Fiction, Fantasy, and Horror in 2010.

11.     Besides his work in entertainment, Plaintiff was active in the community, serving on the Los Angeles Area Chamber of Commerce's Board of Directors.

12.     Up to the time of his unlawful arrest and detention on September 11, 2015, Plaintiff remained an active and successful film executive.

13.     Since the time of his arrest, Plaintiff's reputation has been tarnished by the Los Angeles County District Attorney's Office (andas a result, in the the press) as having participated in a "Ponzi Scheme." For example, an October 15, 2015 "news release" issued from the Office of Defendant Jackie Lacey (available online as of the date of this filing at: http://da.co.la.ca.us/sites/default/files/press/101515_Film_Director_Insurance_Agent_Charged_in_215_Ponzi_Scheme_0.pdf ) announced that Plaintiff was "charged for allegedly bilking more than $21 million from people investing in the 2009 film 'Not Forgotten'" in a scheme that "spanned from 2007 to 2010 and involved nearly 140 investors, most of whom who were elderly."Notably, no announcement appears on the District Attorney's Office website stating that all charges against Plaintiff were subsequently dismissed. With respect to the press, the Los Angeles Times has reported under the headline

"Director of 2009 movie flop accused of using Ponzi scheme to fund film" that "After [Not Forgotten's] completion, Seward and Soref solicited more funds from investors to produce several films through a company called Windsor Pictures LLC. ¶ However, money used to form Windsor Pictures was instead used to pay back investors in the movie flop. ¶ The alleged scheme is thought to be among the most elaborate film investment frauds the [California Department of Insurance] has investigated." This article remains, as of the filing of this complaint, available online at:

http://www.latimes.com/local/lanow/la-me-ln-ponzi-scheme-movie-20151015-story.html

14. Because of Plaintiff's unlawful arrest and detention, he has been unable to find work in his chosen profession – and indeed, in any profession. Plaintiff has suffered extreme emotional distress (causing, *inter alia*, the break-up of his marriage); and, other damages. Plaintiff's damages are directly and proximately caused by the devastating reputational impact engendered by his unlawful arrest, detention, and prosecution by Defendants.

**Defendants**

15. **Summary of Defendants' Actionable Conduct:** Defendants listed below, including all Doe Defendants, engaged in illegal and actionable conduct, including Monnell violations, that deprived Plaintiff of his liberty and dignity –causing him substantial economic and reputational damages – when they knowingly caused him to be falsely arrested and imprisoned for over 140 days on charges which should have never been brought. Furthermore, Plaintiff was denied equal protection under the law because he was disparately treated due

to his national origin. Thus, Defendants knowingly engaged in discrimination while acting as an agency receiving federal funding, conspired to interfere with Plaintiff's civil rights, either refused or acted with negligence in failing to prevent other Defendants interference with Plaintiff's civil rights, and, caused Plaintiff to incur substantial attorneys' fees in filing this rightful action.

16.   Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, Defendant STATE OF CALIFORNIA is and was a governmental public entity subject to the United States Constitution, applicable federal laws and regulations, as well as the Constitution of the State of California.

17.   Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, Defendant COUNTY OF LOS ANGELES is and was a governmental public entity (and therefore "person" for the purposes of applicable federal and state law), duly organized and existing under, by virtue of, and subject to the laws of the State of California, applicable Federal law and the United States Constitution. To wit, Defendant COUNTY OF LOS ANGELES is and was, at all times relevant to this litigation, responsible for hiring, training, supervising and/or enacting the conduct, policies, and practices of the Los Angeles County District Attorneys' Office.

18.   Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, Defendant CALIFORNIA DEPARTMENT OF BUSINESS OVERSIGHT (formerly known as CALIFORNIA DEPARTMENT OF CORPORATIONS and hereinafter referred to as "DBO"), is and was a public entity and a Department of the State of California, duly organized and existing under, by virtue of, and

subject to the laws of the State of California and was responsible for hiring, training, and supervising the conduct, policies and practices of its employees and agents, and all of its members. The DBO is a state agency that regulates various financial transactions in the State of California, including corporate securities law of 1968.  The enforcement Division of the DBO is responsible for enacting, overseeing and supervising all policies regarding investigations and public actions against entities and individuals that violate laws under the DBO's jurisdiction.

19.   Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, Defendant CALIFORNIA DEPARTMENT OF INSURANCE (hereinafter "DOI"), is and was a public entity and a Department of the State of California, duly organized and existing under, by virtue of, and subject to the laws of the State of California and was responsible for hiring, training, and supervising the conduct, policies, and practices of its supervisors, employees and/or agents. Pursuant to its own representations: "The State of California, Department of Insurance is the licensing and regulatory authority of entities and individuals transacting insurance with the State of California. Insurance Code Section 12921 mandates that the Insurance Commissioner enforce the Insurance Code and other laws regulating the business of insurance." The DOI enforces, *inter alia*, state insurance laws in California.

20.   Plaintiff is informed and believes and based thereon alleges, that at all times relevant herein, Defendants, JACKIE LACEY, and DOES 1 through 10, inclusive, were residents of the County of Los Angeles, State of California and were the District Attorney of the Los Angeles

County District Attorney's Office and/or held other positions within the Los Angeles County District Attorney's Office, and in conjunction with said employment were delegated with the authority and responsibility of carrying out the training, supervisory, and disciplinary functions of the County of Los Angeles District Attorney's Office, including responsibility for the setting and implementation of departmental policy acted upon by its deputy district attorneys, who at all times relevant herein, were acting in the course and scope of their employment and under color of law.  Each Defendant named herein is sued both in his/her individual and official capacity.

21.  Plaintiff is informed and believes and based thereon alleges, that at all times relevant herein, Defendants, DAVE JONES, and DOES 11through 20, inclusive, were residents of the State of California and were the California Insurance Commissioner and/or held other positions within the California Department of Insurance, and in conjunction with said employment were delegated with the authority and responsibility of carrying out the training, supervisory, and disciplinary functions of the California Department of Insurance, including responsibility for the setting and implementation of departmental policy brought by its employees/investigators, who at all times relevant herein, were acting in the course and scope of their employment and under color of law.  Each Defendant named herein is sued both in his/her individual and official capacity.

22.  Plaintiff is informed and believes and based thereon alleges, that at all times relevant herein, Defendants, JAN LYNN OWEN, and DOES 21 through 30, inclusive, were residents of the State of California and

were the Commissioner of the Department of Business Oversight (formerly known as California Department of Corporations) and/or held other positions within the Department of Business Oversight, and, in conjunction with said employment, were delegated with the authority and responsibility of carrying out the training, supervisory, and disciplinary functions of the California Department of Business Oversight, including responsibility for the setting and implementation of departmental policy brought by its employees/investigators, who at all times relevant herein, were acting in the course and scope of their employment and under color of law.  Each Defendant named herein is sued both in his/her individual and official capacity.

23.    Plaintiff is informed and believes and based thereon alleges that, at all times relevant herein, Defendant RENEE CARTAYA (hereinafter referred to as "Cartaya"), and DOES 31 through 40, inclusive, were residents of the County of Los Angeles, State of California, and at all times mentioned herein, were Deputy District Attorneys, supervisors and/or employees of the County of Los Angeles District Attorneys' Office and were acting under color of authority and pursuant to the regulations, customs and usages of the County of Los Angeles District Attorneys' Office and under color of the authority of that department. Each Defendant herein is sued in his/her individual and official capacity.  RENEE CARTAYA was the prosecutor of Plaintiff in Los Angeles Superior Court case No. BA439544.

24.    Plaintiff is informed and believes and based thereon alleges that, at all times relevant herein, Defendant BLAINE NOBLETT (hereinafter referred to as "Noblett"), and DOES 41 through 50, inclusive, were residents of the County of Los Angeles, State of California, and at all

times mentioned herein, were attorneys and/or members, supervisors and/or employees of the California Department of Business Oversight, and were acting under color of authority and pursuant to the regulations, customs and usages of the California Department of Business Oversight and under color of the authority of that department.  Each Defendant herein is sued in his/her individual and official capacity.  Defendant NOBLETT was lead investigator and "Attorney for Plaintiff" for the Department of Corporations (now Department of Business Oversight) in a 2012 lawsuit was entitled "THE PEOPLE OF THE STATE OF CALIFORNIA, BY AND THROUGH THE CALIFORNIA CORPORATIONS COMMISSIONER, vs. PROTÉGÉ FINANCIAL & INSURANCE SERVICE, INC., …..NOT FORGOTTEN, LLC; WINDSON PICTURES, LLC; … MICHELLE KENEN SEWARD, as an individual; DROR SOREF as an individual: …." (Los Angeles Superior Court case No. BC492536). Defendant NOBLETT investigated the civil case and served as co-prosecutor in Plaintiff's criminal case (Los Angeles Superior Court case No. BA439544). Therefore, Defendant NOBLETT had actual knowledge of facts alleged in the criminal complaint well before September 8, 2011, meaning that the statute of limitations had run and the criminal complaint was not timely brought.

25.  Plaintiff is informed and believes and based thereon alleges that, at all times relevant herein, Defendant JUNE J. ARAGO (also known as JOJO ARAGO and hereinafter referred to as "Arago"), and DOES 51 through 60, inclusive, were residents of the County of Los Angeles, State of California, and at all times mentioned herein, were

investigators and member of the California Department of Insurance, and were acting under color of authority and pursuant to the regulations, customs and usages of the California Department of Insurance and under color of the authority of that department.  Each Defendant herein is sued in his/her individual and official capacity. Defendant JUNE J. ARAGO was the investigator, and the person who signed the probable cause declaration for the search warrant and Plaintiff's arrest warrant despite personal knowledge that no probable cause existed for the search or Plaintiff's arrest.

26.   Plaintiff is informed and believes and based thereon alleges that at all times herein mentioned, Defendants and DOES 1 through 60 inclusive, committed the herein alleged acts either as individuals and/or in their official capacity as District Attorney, Commissioner of Business Oversight, Commissioner of Insurance, Deputy District Attorneys, Attorneys, Investigators, and/or employees, and agents, policy makers and representatives for the LOS ANGELES COUNTY DISTRICT ATTORNEY'S OFFICE, a department and subdivision of Defendant COUNTY OF LOS ANGELES; CALIFORNIA DEPARTMENT OF BUSINESS OVERSIGHT and CALIFORNIA DEPARTMENT OF INSURANCE, departments and subdivisions of Defendant STATE OF CALIFORNIA.

27.   Plaintiff is unaware of the true names and/or capacities of Defendants sued as Does 1 through 60, inclusive, and, therefore, sue said Defendants by such fictitious names.  Plaintiff will amend this complaint, by leave of the court if necessary, to allege their true names and/or capacities when ascertained.  Plaintiff is informed and believes and based thereon alleges, that Defendants Does 1 through

60, inclusive, and each of them, were the agents and servants of the other Defendants and at all times were acting, within the scope of said agency and are jointly obligated with the remaining Defendants.

## B. **STATEMENT OF FACTS**

28.     Plaintiff met Michelle Seward ("Seward") in 2005. In 2006, Seward informed Plaintiff that she was a financial planner and able to raise funds for film projects. Seward represented that at no time would more than 10% of any investors' assets be invested in any film.

29.     Seward was an insurance broker licensed by Defendants California Department of Insurance.  Seward was the Owner of Protégé Financial and Insurance Services, Inc. and Saxe-Coburg Insurance Solutions, LLC.

30.     Relying on Seward's representations, Plaintiff and Seward formed **Not Forgotten, LLC** – a firm created to finance the movie "Not Forgotten."  The film was completed in 2008 and received critical acclaim, including being chosen as the opening film at the well-respected Slamdance film festival. The film received the Saturn Award and was premiered at the Hollywood Chinese Theater.

31.     After the completion of the film, "Not Forgotten," Seward and Plaintiff formed **Windsor Pictures, LLC** – a firm created for the purpose of developing and producing other film projects.

32.     On or around September 8, 2015, the People of the State of California, through the District Attorney of Los Angeles County filed a 72-count felony complaint (Case No. BA439544)in the Los Angeles Superior

Court, naming Plaintiff and Seward as co-defendants, alleging 15 violations of Corporations Codes §25110/25540(a) [offering and sale of unqualified security-issuer transactions], 56 violations of Corporations Codes §25401(b)/25540(b) [untrue statements and omissions of material facts communicated in connection with the sale of securities]; and, one violation of Corporations Code §25541[maintaining a device, scheme, or artifice to fraud, in connection with the sale of a security].  Plaintiff and Seward faced identical charges under the complaint.

33.  On September 11, 2015, Plaintiff was arrested and held in lieu of $2,700,000.00 bail.  Although both, Plaintiff and his Co-Defendant, Seward, faced **<u>identical charges</u>** under the Complaint, Seward's bail was set at $1,000,000.00 and Plaintiff's bail at $2,700,000.00.

34.  Curiously, Seward was released on her own recognizance (OR)almost immediately after her arrest while Plaintiff was forced to spend 140 days in jail.

35.  Of the 72 felony counts charged on September 11, 2015, the earliest was alleged to have occurred November 14, 2007.<u>CA Penal Code section 801.5 requires that prosecution of any violation of Corporations Code §§ 25110, 25540, 25401, 25540 (b), and 25541, in which fraud is alleged must be commenced within four years after commission of the offense.</u>

36.  California case law makes clear that an accusatory pleading which seeks to avoid the bar of the statute of limitations by pleading the "discovery" provision of the Penal Code must allege facts showing: (1) the date on which the offense was 'discovered'; (2) how and by whom the offense was 'discovered'; (3) lack of knowledge, both

actual or constructive, prior to the date of 'discovery'; (4) the reason why the offense was not 'discovered' earlier. (See e.g., <u>People v. Lopez</u>, 52 Cal.App.4th 233, 245; <u>People v. Zamora</u>, 18 Cal.3d 538, 564–565 [fn. 26].) Defendants' complaint does not meet the jurisprudential requirements for pleading under the "discovery" provision because it does not allege facts stating: lack of knowledge, both actual or constructive, prior to the date of 'discovery'; and/or, the reason why the offense was not 'discovered' earlier.

37.     On September 23, 2015, the Los Angeles County Probation Department Services Division prepared a Report of Pretrial Investigation regarding Plaintiff, his danger to the community, and his risk of flight (the "Pretrial Report").  The Pretrial Report concluded that Plaintiff "scored in the low range on the risk assessment."

38.     The Pretrial Report states, without substantiation, that "I/O (CAL. DEPT. OF INSURANCE), CLAIMS THE DEFENDANT *MAY HAVE DUAL CITIZENSHIP (ISRAEL)* [and] IS OPPOSED TO RELEASE O.R. (*sic*) DUE TO HIGH FLIGHT RISK." No explanation – other than the possibility that Plaintiff <u>possibly</u> had dual citizenship – is offered by the DOI investigating officer as to why Plaintiff was considered to be a "high flight risk." Plaintiff had no other pending cases and had only one misdemeanor conviction dating back to 1992.

39.     On September 28, 2015, Plaintiff appeared with counsel before the trial court for a bail review.

40.     At the bail hearing held on September 28, 2015, the trial court questioned Defendant Cartaya whether she contended Plaintiff was "a flight risk."

<u>The Court:</u> All Right. Is your position he's a flight risk?

<u>Ms. Cartaya:</u> Yes, the people feel that his ties to Israel make him a flight risk.

<u>The Court:</u> Has he ever –has he ever failed to appear, as far as you know?

<u>Ms. Cartaya:</u> No, Your Honor.

<u>The Court:</u> Any Bench Warrants?

<u>Ms. Cartaya:</u> That would have been something that would have shown up on the O.R. Report, and they did not indicate that.

<u>The Court:</u>  Any recent travel to Israel that you're aware of?

<u>Ms. Cartaya:</u>  I do not know. I know the D.A. Investigator contacted him within the last month and tried to set up an interview with him or appointment, and he indicated he was out of the country at that time to the D.A. Investigator.

<u>The Defendant [Plaintiff Soref]:</u> Not True

<u>Mr. Altman:</u> Your Honor, I can speak to that. He was out of state, and we left a message as well.

<u>The Court:</u> So as far as you know, he hasn't traveled internationally in the last 10 or 20 years?

<u>Ms. Cartaya:</u> No …."

41.     Defendants District Attorney's Office and Does 31 through 40, inclusive, offered no other reason for their estimation that Plaintiff was a "flight risk" other than Plaintiff's "ties to Israel."

42.     At the hearing, the trial court commented on the disparate treatment offered to Seward and asked Defendants Cartaya and Does 31 through 40, inclusive, about their respective culpability.

> The Court: "What is the relevance – they're charged the same. What is the relative culpability between the two defendants, as far as you're concerned?"
>
> Ms. Cartaya: "It appears that this Defendant is the more culpable based upon the bank records and the fact that he's a signatory in the two main companies."

43.   This is an outright misrepresentation by Defendants District Attorney's Office, Cartaya and Does 1 through 10 and 31 through 40, inclusive.

44.   At the time Defendants Cartaya and/or the Doe Defendants made this statement, Defendants District Attorney's Office, Cartaya and/or the Doe Defendants, were in possession of substantial amounts of evidence that had not been made available to Plaintiff, including summaries of interviews from dozens of complaining witnesses, all of whom confirmed that all alleged misrepresentations came from Co-Defendant Seward and that they had had no substantive pre-investment communications whatsoever with Plaintiff.  Most of the complaining witnesses had never met Plaintiff or knew who he was.

45.   Additionally, Defendant Arago and Does 51 through 60, inclusive, in his Statement of Probable Cause to the Search Warrant and Affidavit filed with the Los Angeles Superior Court on November 20, 2014 (which was also attached to the Probable Cause Declaration of June J. Arago for the Arrest Warrant of Plaintiff in the Felony Complaint BA439544), stated "[A]fter further investigation and interviews with Seward's clients, your affiant determined that Seward induced her clients in investing into another venture, Windsor, in the form of bridge loans. According to California Secretary of State records, Soref

is the sole managing member of Windsor; however, through interviews with Seward and Soref, your affiant learned that it was Seward who was running the finances of Windsor and who made contact with the investors. For the bridge loan agreements, Seward told the investors that her agencies, Protégé and Saxe-Coburg were guaranteeing the principal on the loans." (*Page 11 of the Search Warrant and Affidavit.*)

46. Defendants District Attorney Cartaya and/or the Doe Defendants' representation to the Court that *"It appears that this Defendant is the more culpable based upon the bank records* "was not only another misrepresentation to the court but also completely lacked any factual basis. The charges alleged – Corp. Code §25110 [unqualified sale of unqualified securities] and Corp. Code §25401(b) [untrue statements in connection with the sale of security] – involved the sale of securities, and Seward remained the only defendant who had been identified as being involved in that process.

47. After the September 28, 2015 hearing, the trial court issued a written ruling denying Plaintiff's request for reduced bail. Incredibly, the trial court characterized the District Attorney's single unsubstantiated representation – *"It appears that this Defendant is the more culpable based upon the bank records"* – as "persuasive" evidence that Plaintiff is more culpable than Seward.

48. On October 13, 2015, at the preliminary hearing setting, Defendants District Attorney's Office and/or the Doe Defendants provided a second tranche of discovery to Plaintiff's counsel consisting of approximately 562 pages of documents. Among other things, this discovery contained investigative memoranda of witness interviews.

49.   Thereafter, Plaintiff filed a Motion for Reconsideration based on the newly produced discovery, which directly contradicted the representations made at the first bail hearing by Defendants District Attorney Cartaya and the Doe Defendants that Plaintiff was the more culpable party. In fact, none of the discovery contained any evidence that Plaintiff ever offered to sell a security or instigated a sale of securities at any time. For example, one of the investigator's reports of one alleged victim contained the following statements: "I asked B and G if they knew Dror Soref and they said no. They said they only knew of Soref's name when it was mentioned in one of Seward's letter (*sic*) to investors, informing them that Soref was not cooperating with her efforts to address the situation."

50.   On October 30, 2015, the Court denied Plaintiff's Motion for Reconsideration.

51.   On December 14, 2015, Plaintiff filed a demurrer to the complaint due to lack of jurisdiction as to Counts 1-59 and 61-71. The demurrer requested alternative relief in the form of an evidentiary hearing on the alleged tolling of the statute of limitations. The attached memorandum clearly states that: "The events underlying these Counts in this matter occurred well over four years ago, some almost eight years prior to the filing of the complaint" – all periods outside the statute of limitations for each alleged count. The Demurrer alerted the Court that Defendants provided no justification for the delay in bringing charges. Further, the Court was made aware that Defendants disingenuously attempted to remedy the defective pleading by "tethering" the discoverability of these acts to an arbitrary starting

Complaint for Damages

point: a letter sent by Seward to the investors exactly four years to the day prior to the filing of the complaint.

52. Defendants District Attorney's argument regarding the date of discovery of the alleged violations is undermined by a plethora of evidence and actions taken before the letter was written, including: the lodging of formal and informal complaints by investors, completed and inchoate settlement negotiations with investors, as well as a full-fledged investigation by Defendants DBO, and/or the Doe Defendants months earlier and a formal complaint to the DOI and/or the Doe Defendants, by two of the complaining witnesses over one year earlier.

53. Plaintiff's demurrer was overruled on January 7, 2016. However, the hearing on the tolling of the statute of limitations was continued to March 1, 2016.

54. At the January 7, 2016 hearing, the matter regarding the bail was also heard. The Court raised the issue whether Plaintiff was a flight risk. Again, Defendant Cartaya indicated that the District Attorney's Office stated that Plaintiff was a flight risk because of the pending charges and Plaintiff's ties to Israel. Bail was reduced from $2.7 million to $350,000.00 due to Defendants District Attorneys and/or the Doe Defendants' inability to justify the unreasonably high bail. However, Defendant Michelle Seward, who was charged with exactly the same crimes but had no ties to Israel, had been released on her own recognizance since September.

55. On February 10, 2017, Plaintiff filed a motion to dismiss counts 1-59 and 61-71 due to lack of jurisdiction pursuant to California Penal Code §1385. The events underlying Counts 1-59 and 61-71 in this

matter occurred well over four years – some almost eight years – prior to the filing of the complaint.

56. Although the law only requires constructive notice to either the alleged victim or law enforcement in order to trigger P.C. §803 discovery, the preliminary hearing evidence shows that both the alleged victims and law enforcement were aware of the facts giving rise to the claims well before September 8, 2011 (the date of the letter which Defendants asserted as the discovery date for statute of limitations purposes).  In fact, the DBO began formal investigations prior to September 8, 2011, leading the DBO and the DOI to file the civil lawsuit in 2012. These criminal charges were filed in 2015. By the very legal definition of what is required to trigger P.C. §803 discovery ("circumstances sufficient to make them suspicious of fraud thereby leading them to make inquiries" [authority]), law enforcement possessed that information well over four years prior to filing the complaint.

57. Even if each alleged victim was not individually aware that they were victims of a crime, law enforcement was made aware of specific facts which gave them, or should have given them, reason to suspect that a violation of the securities laws had occurred.

58. On February 27, 2017, in considering the question of statute of limitations during one of the many sessions that comprised the lengthy Preliminary Hearing (which lasted five weeks), the Court found it was clear from witness testimony that the law enforcement was aware of the specific facts which gave them, or should have given them, reasons to suspect that violations of the securities laws had occurred long before the date of discovery asserted by the Prosecution.

59.   For example, in 2010, the Hashibas filed a complaint with the SEC regarding their investment in Not Forgotten and Windsor Pictures.  In late September or early October of 2010, the SEC forwarded that complaint to DBO.

60.   After receiving the Hashibas' complaint from SEC, the DBO opened a case file and began its own investigation. As part of that investigation, the DBO determined **as early as October 2010** that no qualification permit had been issued with respect to the securities at issue.

61.   DBO Senior Counsel Karen Patterson prepared an investigatory memo regarding the Hashibas complaint on October 7, 2010. On February 2011, the Hashibas filed an additional complaint directly with the DBO, asserting specific representations made by Seward and specifically implicating Plaintiff. Between October 2010 and March 2011, the DBO's only attempt to contact the Hashibas or to identify other investors consisted of a single email, which received no response, so the file was closed.

62.   The case was reopened in March 2011, when DBO counsel Defendant Noblett was assigned to work on the file. In May 2011, Defendant Noblett determined that the issuers in question were Not Forgotten and Windsor Pictures and focused his investigation on those entities. Subpoenas were issued and responses were received. Even though, DBO had compiled a list of investors of Not Forgotten and Windsor Pictures in May 2011, DBO did not contact any of the investors until December 2011.

63.   As to the Defendants District Attorney's Office and the Doe Defendants, they were first put on notice by investor Sara Floyd on October 18, 2010 when she sent a letter to the Major Fraud Division

of the Los Angeles District Attorney's Office complaining about Seward, Plaintiff and Skyline Pictures and followed up with a formal complaint form in November 2010 and then again in March 2011, when they received an anonymous letter alleging that Seward, Plaintiff, Not Forgotten, Protégé Financial, and Skyline Pictures were perpetrators of a multi-million dollar Ponzi scheme.

64. As to Defendants DOI and the Doe Defendants, during the Preliminary Hearing Ms. Hashiba testifies that she informed the DOI about her experiences with Plaintiff and Seward in July 2010, and that the DOI responded within about a week that they had begun an investigation which indicated that there were violations. Defendant Arago testified that the DOI dealt with Ms. Hashiba's insurance issue and, as to the investment issues, it referred her to her local District Attorney's office in November 2010.

65. During this time frame, the Federal Bureau of Investigation ("FBI") was conducting its own investigation of Plaintiff and Seward, including interviews with investors. While Plaintiff doesn't know the exact timeline when this investigation began, he does know that it goes back to at least April 2011, when the FBI contacted Winnie Hashiba.

66. On February 27, 2017, the Court also heard Plaintiff's motion to dismiss Counts 1-59 and 61-71 for lack of jurisdiction. At the hearing the Court questioned counsel, heard oral arguments and dismissed Counts 1-59 and 61-71. The Court made the following ruling:

> "Even with that low standard, I believe and find as a matter
> of law, because there really is no factual dispute, I find as
> a matter of law that law enforcement and investigative

agencies as early as 2010, certainly the latter half of 2010 and even stronger the last quarter of 2010, were on sufficient notice, actually notice (*sic*) that the statute of limitations starts running for four years after October of 2010, which means the statute of limitations would expire in October or November of 2014.

….

The People strongly urged the court to adopt a standard, of 'let us complete our investigation to the point where we really believe we are going to file a complaint, then we should start counting.' I believe it is an arbitrary standard. *It may be policy of a prosecutorial agency to follow that kind of rule, or regulation, or common practice*, but I think it is a recipe for disaster when there is sufficient information and dramatic information which puts the prosecution team well on notice before they decide in their wisdom to actually pick a date and say, 'we are going to file it.' *And interestingly enough, there is a date very, very much after actual notice.*

…

As a legal determination by the court based upon my obligations to follow the dictates of the California Supreme Court and the Courts of Appeal in the State of California, the defense motion to dismiss Counts 1 through 59 and 61 through 71 is granted."

Complaint for Damages

67. Plaintiff's motion to dismiss Counts 60 and 72 were heard on March 16, 2017. The Court dismissed both counts. In doing so, the Court stated:

> "... As I look to the totality of the evidence in this case and the reasonable inferences that can be made, I find the people have not met their burden as to either Count 60 or 72.
>
> *There are speculations. There can be excellent arguments, but the inferences that the People expect to draw are not based upon a standard of strong suspicion. The elements of intent and knowledge are not satisfactory.* And with that in mind, recognizing the appropriate standard of proof at preliminary hearing, the court will grant the defense motion to dismiss Counts 60 and 72 in this case.
>
> *I find from a legal position that the evidence is insufficient.*
> …
> Therefore, the defense motion to dismiss Counts 60 and 72 based upon insufficiency of the evidence from a legal stand point is granted. They are dismissed." (Emphasis and underlines added)

68. As a result of the unlawful and discriminatory acts by the Defendants, Plaintiff Dror Soref, a 66 year-old United States citizen who resided in within Los Angeles County for over 40 years – the adoptive father of a young child, a husband with no meaningful criminal history – spent approximately 140 days[1] in jail on a charges that should never have

---

[1] Mr. Soref was arrested on or around September 11, 2015 and released on or around January 28, 2016.

been brought because the statute of limitations had run, had no legal merit, and because an unreasonable bail was set, for no other reason than he had "ties to Israel."

69. As a result of the unlawful and discriminatory acts by the Defendants, Plaintiff's professional reputation has been destroyed.

70. As a result of the unlawful and discriminatory acts by the Defendants, Plaintiff has been unable to find work as a filmmaker and/or director, writer or producer of films or comparable employment because his credibility has been publicly destroyed.

## III
## INJURIES TO PLAINTIFF

71. As the direct and proximate result of the conduct of the Defendants as stated above, Plaintiff has suffered an unconstitutional and illegal deprivation of his liberty, overwhelming economic and emotional hardship, including, but not limited to: loss of current and future earnings, the dissolution of his marriage, costs to defend an illegal arrest, costs to post a bond, loss of reputational "good will" and the inability to procure work in his chosen profession – or, indeed, any work suitable to his qualifications.

72. As the direct and proximate result of the conduct of the Defendants as stated above, Plaintiff has suffered and will continue to suffer emotional distress and mental suffering as the result of humiliation from publicity; indignity and humiliation from arrest, booking, treatment while incarcerated, and regular physically invasive searches; physical consequences, including deterioration of health;

unconstitutional deprivation of liberty; defamation of character; stress; and loss of standing in the community.

## IV

## CAUSES OF ACTION

A. **FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS: Violation Of 42 USC § 1983 (Unconstitutional [Monell Theory] Deprivation of Liberty: Statutory False Imprisonment) and 42 U.S.C. § 1988**

73.   Plaintiff refers to and incorporates by reference each and every allegation contained in paragraphs 1 through 72 into this section as if fully set forth herein.

74.   42 USC § 1983 creates liability to an injured party, including the availability of money damages, for any person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

75.   Each and every Defendant (including all "Doe" Defendants) named in this complaint is a "person," "public entity," policy maker" and/or "public employee" as that term has been defined under United States and California law.

76.   Each and every Defendant (including all "Doe" Defendants) named in this complaint, acting in their official and individual capacities, were, at all times related to the present complaint, acting under the color of state law.

77.   No Defendant named in this suit is a "judicial officer" as contemplated under 42 USC § 1983.

78.   The Fourth Amendment to the United States Constitution, as applied to the several States through the 5th and 14th Amendments, protects all citizens of the United States from arbitrary and unlawful arrest and imprisonment. The California Constitution, and therefore State law, similarly protects California residents from arbitrary arrest and imprisonment.

79.   California Government Code § 815.2 – a state law – provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

80.   California Government Code § 820.4 – a state law – provides that a public employee is not exonerated from liability for false arrest and/or imprisonment.

81.   On or around September 8, 2015, Defendants filed a 72-count felony complaint against Plaintiff alleging 15 violations of CA Corporations Code § 25110/25540(a), 56 violations of CA Corporations Code § 25401(b)/25540(b), and 1 violation of CA Corporations Code § 25541. The complaint alleged that all counts are related felonies involving a material element of fraud. The statute of limitations for crimes involving fraud under CA Penal Code §§ 801.5 and 803(c) expires after four years of the completion of the offense or discovery of the commission of the offense, whichever is later. The Defendants knew and negligently and/or recklessly disregarded the fact that, at the

time the complaint was filed, the acts and/or discovery of the acts alleged in Counts 1-59 and 61-71 occurred prior to September 8, 2011 – four years prior to the date of the filing and therefore after the statute of limitations had expired. Furthermore, the Defendants knew and negligently and/or recklessly disregarded the fact, at the time the complaint was filed, that Count 60 and Count 72 were not related to any act or omission committed by Plaintiff.

82. As a direct and proximate result of the Defendants actions, Plaintiff was deprived of his constitutional rights when he was taken into custody on September 11, 2015 and not released until on or around January 28, 2016 – meaning Plaintiff spent 140 days in custody solely because of the illegal and unjustified conduct of the Defendants while they acted under color of law.

83. Each and every Defendant herein named (including all Doe Defendants) committed acts and/or omissions which enacted and/or ratified polices and/or municipal customs which foreseeably and proximately resulted in Plaintiff's unlawful imprisonment.

84. Further, Defendants are alleged to have maintained, and/or participated in a policy permitting the occurrence of the type of wrongs described herein, and based on the principal set forth in <u>Monell vs. New York City Department of Social Services</u> (1978) 436 U.S. 648 and <u>Heller vs. Bushey</u> (9th Cir. 1985) 759 F.2d 1371, are liable for all injuries sustained by Plaintiff. To wit, Defendants knew or should have known that prosecution, and therefore imprisonment, of Plaintiff was barred by the statute of limitations, yet Defendants caused the incarceration of Plaintiff despite said knowledge.

85. **Judicial Deception -- statute of limitations and the arrest warrant:** As separate and equivalent cause of liability under this cause of action, Plaintiff alleges that Defendants, and each of them, violated Plaintiff's civil rights under § 1983 by deceiving a judge and/or magistrate through the presentation of deliberate falsehoods, omission of material facts, and/or recklessly disregarding the truth when they averred to and knowingly omitted material information leading to the issuance of a criminal complaint. For example, Plaintiff points to the warrant affidavit omitting the fact that the statute of limitations had run for the charged offenses. The Defendants, and each of them, should have known that the statute of limitations had run on the charged offenses. The omission is "necessary" and "material" to the issuance of the arrest warrant because the presiding magistrate would not have found probable cause to arrest if made aware of the expiration of the statute of limitations. Thus, Defendants, and each of them, did not act in an objectively reasonable manner in omitting relevant information in their application for a warrant and enjoy no qualified immunity. Furthermore, if the affidavit was supplemented with the omitted fact that the statute of limitations had run, there would have been no probable cause to arrest Plaintiff.

86. **Judicial Deception -- culpability at bail hearing:** As separate and equivalent cause of liability under this cause of action, Plaintiff alleges that Defendants, and each of them, violated Plaintiff's civil rights under § 1983 by deceiving a judge and/or magistrate through the presentation of deliberate falsehoods, omission of material facts, and/or recklessly disregarding the truth when they deliberately misrepresented facts at Plaintiff's bail hearing. For example,

Defendants, and each of them – having a duty of candor to the court[2] –knew or should have known that the investigative material indicated that Michelle Seward was the more culpable of the two co-defendants but maintained the contrary. Thus, Defendants, and each of them, did not act in an objectively reasonable manner in omitting relevant information in their application for bail and enjoy no qualified immunity. Furthermore, if the bail hearing was supplemented with the omitted fact that Michelle Seward was clearly the more culpable co-defendant, there would still be no cause to hold Plaintiff to a higher bail than Ms. Seward.

87.  **Judicial Deception -- statute of limitations and the preliminary hearing:** As separate and equivalent cause of liability under this cause of action, Plaintiff alleges that Defendants, and each of them, violated Plaintiff's civil rights under § 1983 by deceiving a judge and/or magistrate through the presentation of deliberate falsehoods, omission of material facts, and/or recklessly disregarding the truth when they averred to and knowingly omitted material information at the preliminary hearing. For example, Plaintiff points to the omission of the fact that the statute of limitations had run for the charged offenses at the preliminary hearing. The Defendants, and each of them, should have known that the statute of limitations had run on the charged offenses. The omission is "necessary" and "material" to the continuation of the preliminary hearing (which lasted five weeks while Plaintiff was incarcerated) because the presiding judge would not have continued with the preliminary hearing if made aware of the

---

[2] See California Rule of Professional Conduct 5-200 and California Business and Professions Code 6068(d).

expiration of the statute of limitations. Thus, Defendants, and each of them, did not act in an objectively reasonable manner in omitting relevant information in their presentation of evidence at the preliminary hearing and enjoy no qualified immunity.

88.  The aforementioned acts and omissions of each Defendant was done by each Defendant knowingly, intentionally, willfully, maliciously or with such callous disregard with purpose of harassment, oppression ad infliction injury upon the Plaintiff.  This was done with reckless, wanton and callousness of Plaintiff's civil rights and by reason thereof.  Plaintiff claims exemplary and punitive damages from the non-governmental Defendants in a sum to be determined by this Court – but in no case less than $10 Million – to deter, educate and prevent Defendants from ever inflicting such injuries again upon any individual.

89.  Each of the acts of Defendants was carried out without justification, without probable cause, in bad faith, and with the motive to seek retribution against Plaintiff for crimes of which he was not guilty, had not been tried for, and was, in no manner, criminally liable for.

90.  In order to carry out the foregoing violation of Plaintiff's constitutional rights, the Defendants undertook series of acts alleged throughout this Complaint.

91.  The foregoing conduct of Defendants and statements made in conjunction with that conduct were designed at all times to: deny Plaintiff his right to due process of law, to insure that the Plaintiff would be incarcerated for crimes for which he could not legally be convicted because the statute of limitations had long since expired, to ensure that Plaintiff would be prosecuted in the public eye regardless of the

outcome of the criminal prosecution so that Plaintiff's reputation would be destroyed, and to ensure the invasion of his privacy.

92.    At no time was there probable cause or any good faith belief to believe that Plaintiff was guilty of the alleged criminal charges or that Plaintiff was in any way criminally culpable and, in no event, "more culpable" than his co-defendant Michelle Seward.

93.    By reason of the aforementioned acts and omissions of Defendants, and each of them, Plaintiff retained attorneys to represent them and did incur and continue to incur investigation costs, expenses, attorneys' fees, ad legal costs.  Plaintiff requests payments by Defendants, and each of the, for compensation of fees and costs pursuant to Title 42 U.S.C. § 1988.

**B. SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS:**
**Violation of 42 USC § 2000d (Unconstitutional [Monell Theory]**
**Disparate Treatment Based on National Origin) and 42 USC §1988**

94.    Plaintiff refers to and incorporates by reference each and every allegation contained in Paragraphs 1 through 93 of this complaint into this section as if fully set forth herein.

95.    42 USC § 2000d prohibits discrimination "under any program or activity receiving Federal financial assistance" on the basis of national origin.

96.    42 USC § 2000d-4a(1)(A) defines a program or activity as meaning "all the operations of … a department, agency, special purpose

district, or other instrumentality of a State or of a local government…."

97.  42 USC §2000d-7 provides that in "a suit against a State for a violation" of 42 U.S.C. 2000d *et seq*., "remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State."

98.  The Defendants herein named (including certain Doe Defendants) are departments, agencies, and/or instrumentalities of the State of California and/or the County of Los Angeles. Defendants herein named (including certain Doe Defendants) operate programs receiving Federal financial assistance. For example, for fiscal 2016, Los Angeles County received in $582 million in federal aid, some portion of which was directed to Defendants.

99.  As herein alleged, Defendants made statements under oath or as officers of the court that knowingly misstated facts causing a criminal complaint to be filed that foreseeably and proximately resulted in the Plaintiff being unlawfully arrested and imprisoned, despite the expiration of the statute of limitations for those charges.

100.  As herein alleged, Defendants at each and every bail hearing after Plaintiff's unlawful arrest asserted that Plaintiff was a "flight risk," and therefore not eligible for the same protection under the law as his co-defendant, solely based of his Israeli national origin.

101.  Each and every Defendant herein named (including all Doe Defendants) committed acts and/or omissions which enacted and/or ratified polices and/or municipal customs which foreseeably and

proximately resulted in Plaintiff's unequal treatment under the law solely based on his national origin.

102. Further, Defendants are alleged to have maintained, and/or participated in a policy permitting the occurrence of the type of wrongs described herein, and based on the principal set forth in <u>Monell vs. New York City Department of Social Services</u> (1978) 436 U.S. 648 and <u>Heller vs. Bushey</u> (9th Cir. 1985) 759 F.2d 1371, are liable for all injuries sustained by Plaintiff. To wit, Defendants knew or should have known that Defendants' national origin was an unconstitutional basis on which to impose different conditions of eligibility for bail, yet Defendants repeatedly asserted that Plaintiff was a flight risk solely based on his Israeli national origin.

103. Each of the acts of Defendants were carried out without justification, without probable cause, in bad faith, and with the motive to seek retribution against Plaintiff for crimes which he was not guilty of, had not been tried for, and was, in no manner, criminally liable for.

104. In order to carry out the foregoing violation of Plaintiff's constitutional rights, the Defendants undertook series of acts alleged throughout this Complaint.

105. The foregoing conduct of Defendants and statements made in conjunction with that conduct were designed at all times to: deny Plaintiff his right to equal protection under the law, having the effect of ensuring that Plaintiff remained incarcerated for crimes for which he could not legally be convicted because the statute of limitations had long since expired; to ensure that Plaintiff would be prosecuted in the public eye regardless of the outcome of the criminal prosecution so that

Plaintiff's reputation would be destroyed; and, to ensure the invasion of his privacy. Notably, Defendants maintained said conduct while a co-defendant remained charged with exactly the same crimes yet was released on her own recognizance.

106. At no time was there probable cause or any good faith belief to believe that Plaintiff was guilty of the alleged criminal charges or that Plaintiff was in any way criminally culpable and, in no event, "more culpable" than his co-defendant Michelle Seward.

107. **Judicial Deception -- statute of limitations and the arrest warrant:** As separate and equivalent cause of liability under this cause of action, Plaintiff alleges that Defendants, and each of them, violated Plaintiff's civil rights under § 2000d by deceiving a judge and/or magistrate through the presentation of deliberate falsehoods, omission of material facts, and/or recklessly disregarding the truth when they averred to and knowingly omitted material information leading to the issuance of a criminal complaint. For example, Plaintiff points to the warrant affidavit omitting the fact that the statute of limitations had run for the charged offenses. The Defendants, and each of them, should have known that the statute of limitations had run on the charged offenses. The omission is "necessary" and "material" to the issuance of the arrest warrant because the presiding magistrate would not have found probable cause to arrest if made aware of the expiration of the statute of limitations. Thus, Defendants, and each of them, did not act in an objectively reasonable manner in omitting relevant information in their application for a warrant and enjoy no qualified immunity. Furthermore, if the affidavit was supplemented

with the omitted fact that the statute of limitations had run, there would have been no probable cause to arrest Plaintiff.

108. **Judicial Deception -- culpability at bail hearing:** As separate and equivalent cause of liability under this cause of action, Plaintiff alleges that Defendants, and each of them, violated Plaintiff's civil rights under § 2000d by deceiving a judge and/or magistrate through the presentation of deliberate falsehoods, omission of material facts, and/or recklessly disregarding the truth when they deliberately misrepresented facts at Plaintiff's bail hearing. For example, Defendants, and each of them – having a duty of candor to the court[3] –knew or should have known that the investigative material indicated that Michelle Seward was the more culpable of the two co-defendants but maintained the contrary. Thus, Defendants, and each of them, did not act in an objectively reasonable manner in omitting relevant information in their application for bail and enjoy no qualified immunity. Furthermore, if the bail hearing was supplemented with the omitted fact that Michelle Seward was clearly the more culpable co-defendant, there would still be no cause to hold Plaintiff to a higher bail than Ms. Seward.

109. **Judicial Deception -- statute of limitations and the preliminary hearing:** As separate and equivalent cause of liability under this cause of action, Plaintiff alleges that Defendants, and each of them, violated Plaintiff's civil rights under § 2000d by deceiving a judge and/or magistrate through the presentation of deliberate falsehoods, omission of material facts, and/or recklessly disregarding the truth when they

---

[3] See California Rule of Professional Conduct 5-200 and California Business and Professions Code 6068(d).

averred to and knowingly omitted material information at the preliminary hearing. For example, Plaintiff points to the omission of the fact that the statute of limitations had run for the charged offenses at the preliminary hearing. The Defendants, and each of them, should have known that the statute of limitations had run on the charged offenses. The omission is "necessary" and "material" to the continuation of the preliminary hearing (which lasted five weeks while Plaintiff was incarcerated) because the presiding judge would not have continued with the preliminary hearing if made aware of the expiration of the statute of limitations. Thus, Defendants, and each of them, did not act in an objectively reasonable manner in omitting relevant information in their presentation of evidence at the preliminary hearing and enjoy no qualified immunity.

110.   The aforementioned acts and omissions of each Defendant were done by each Defendant knowingly, intentionally, willfully, maliciously or with such callous disregard with purpose of harassment, oppression and infliction injury upon the Plaintiff.  This was done with reckless, wanton and callousness of Plaintiff's civil rights and by reason thereof.  Plaintiff's claim exemplary and punitive damages from the non-governmental Defendants in a sum to be determined by this Court – but in no case less than $10 Million – to deter, educate and prevent said Defendants from ever inflicting such injuries again upon any individual.

///

## C. THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS: Violation of 42 USC § 1985 (Conspiracy to Interfere with Civil Rights) and 42 USC § 1988

111.   Plaintiff refers to and incorporates by reference each and every allegation contained in paragraphs 1 through 110 of this complaint into this section as if fully set forth herein.

112.   42 USC § 1985 (3) provides, in relevant part, that an injured party has an action for the recovery of damages against one or more of the conspirators where "two or more persons in any State … conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons … the equal protection of the laws, or of equal privileges and immunities under the laws" and an act in furtherance of the conspiracy is committed by at least one of the conspirators.

113.   Defendants acted in concert and therefore did conspire to deprive Plaintiff, an American citizen, the equal protection of the laws when they asserted that he was a "flight risk" solely on the basis of his national origin.

114.   An act in furtherance of the conspiracy was committed when the Defendants asserted that Plaintiff was a "flight risk" solely because of his national origin at multiple bail hearings.

115.   An act in furtherance of the conspiracy was committed when any and all approvals, whether given explicitly or tacitly, for actions of the Defendants were given by any other Defendant.

116.   Each and every Defendant herein named (including all Doe Defendants) committed acts and/or omissions which enacted and/or ratified polices and/or municipal customs which foreseeably and

proximately resulted in Plaintiff's unequal treatment under the law solely based on his national origin.

117. Further, Defendants are alleged to have maintained, and/or participated in a policy permitting the occurrence of the type of wrongs described herein, and based on the principal set forth in <u>Monell vs. New York City Department of Social Services</u> (1978) 436 U.S. 648 and <u>Heller vs. Bushey</u> (9th Cir. 1985) 759 F.2d 1371, are liable for all injuries sustained by Plaintiff. To wit, Defendants knew or should have known that Defendants' national origin was an unconstitutional basis on which to impose different conditions of eligibility for bail, yet Defendants repeatedly asserted that Plaintiff was a flight risk solely based on his Israeli national origin.

118. Each of the acts of Defendants were carried out without justification, without probable cause, in bad faith, and with the motive to seek retribution against Plaintiff for crimes which he was not guilty of, had not been tried for, and was, in no manner, criminally liable for.

119. In order to carry out the foregoing violation of Plaintiff's constitutional rights, the Defendants undertook series of acts alleged throughout this Complaint.

120. The foregoing conduct of Defendants and statements made in conjunction with that conduct were designed at all times to: deny Plaintiff his right to equal protection under the law, having the effect of ensuring that Plaintiff remained incarcerated for crimes for which he could not legally be convicted because the statute of limitations had long since expired; to ensure that Plaintiff would be prosecuted in the public eye regardless of the outcome of the criminal prosecution so that Plaintiff's reputation would be destroyed; and, to ensure the

invasion of his privacy. Notably, Defendants maintained said conduct while a co-defendant charged with exactly the same crimes as Plaintiff was released on her own recognizance.

121.   At no time was there probable cause or any good faith belief to believe that Plaintiff was guilty of the alleged criminal charges or that Plaintiff was in any way criminally culpable and, in no event, "more culpable" than his co-defendant Michelle Seward.

122.   The aforementioned acts and omissions of each Defendant was done by each Defendant knowingly, intentionally, willfully, maliciously or with such callous disregard with purpose of harassment, oppression and infliction injury upon the Plaintiff.  This was done with reckless, wanton and callousness of Plaintiff's civil rights and by reason thereof.  Plaintiff claims exemplary and punitive damages from the non-governmental Defendants in a sum to be determined by this Court – but in no case less than $10 Million – to deter, prevent and educate said Defendants from ever inflicting such injuries again upon any individual.

123.   **Judicial Deception -- statute of limitations and the arrest warrant:** As separate and equivalent cause of liability under this cause of action, Plaintiff alleges that Defendants, and each of them, violated Plaintiff's civil rights under § 1988 by deceiving a judge and/or magistrate through the presentation of deliberate falsehoods, omission of material facts, and/or recklessly disregarding the truth when they averred to and knowingly omitted material information leading to the issuance of a criminal complaint. For example, Plaintiff points to the warrant affidavit omitting the fact that the statute of limitations had run for the charged offenses. The Defendants, and each of them,

should have known that the statute of limitations had run on the charged offenses. The omission is "necessary" and "material" to the issuance of the arrest warrant because the presiding magistrate would not have found probable cause to arrest if made aware of the expiration of the statute of limitations. Thus, Defendants, and each of them, did not act in an objectively reasonable manner in omitting relevant information in their application for a warrant and enjoy no qualified immunity. Furthermore, if the affidavit was supplemented with the omitted fact that the statute of limitations had run, there would have been no probable cause to arrest Plaintiff.

124. **Judicial Deception -- culpability at bail hearing:** As separate and equivalent cause of liability under this cause of action, Plaintiff alleges that Defendants, and each of them, violated Plaintiff's civil rights under § 1988 by deceiving a judge and/or magistrate through the presentation of deliberate falsehoods, omission of material facts, and/or recklessly disregarding the truth when they deliberately misrepresented facts at Plaintiff's bail hearing. For example, Defendants, and each of them – having a duty of candor to the court[4] –knew or should have known that the investigative material indicated that Michelle Seward was the more culpable of the two co-defendants but maintained the contrary. Thus, Defendants, and each of them, did not act in an objectively reasonable manner in omitting relevant information in their application for bail and enjoy no qualified immunity. Furthermore, if the bail hearing was supplemented with the omitted fact that Michelle Seward was clearly the more culpable co-

---

[4] See California Rule of Professional Conduct 5-200 and California Business and Professions Code 6068(d).

defendant, there would still be no cause to hold Plaintiff to a higher bail than Ms. Seward.

125. **Judicial Deception -- statute of limitations and the preliminary hearing:** As separate and equivalent cause of liability under this cause of action, Plaintiff alleges that Defendants, and each of them, violated Plaintiff's civil rights under § 1988 by deceiving a judge and/or magistrate through the presentation of deliberate falsehoods, omission of material facts, and/or recklessly disregarding the truth when they averred to and knowingly omitted material information at the preliminary hearing. For example, Plaintiff points to the omission of the fact that the statute of limitations had run for the charged offenses at the preliminary hearing. The Defendants, and each of them, should have known that the statute of limitations had run on the charged offenses. The omission is "necessary" and "material" to the continuation of the preliminary hearing (which lasted five weeks while Plaintiff was incarcerated) because the presiding judge would not have continued with the preliminary hearing if made aware of the expiration of the statute of limitations. Thus, Defendants, and each of them, did not act in an objectively reasonable manner in omitting relevant information in their presentation of evidence at the preliminary hearing and enjoy no qualified immunity.

126. By reason of the aforementioned acts and omissions of Defendants, and each of them, Plaintiff retained attorneys to represent them and did incur and continue to incur investigation costs, expenses, attorneys' fees, and legal costs. Plaintiff requests payments by Defendants, and each of the, for compensation of fees and costs pursuant to Title 42 U.S.C. § 1988.

**D. FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS:**
**Violation of 42 USC § 1986 (Neglect or Refusal to Prevent an**
**Interference with Civil Rights)**

127.   Plaintiff refers to and incorporates by reference each and every allegation contained in paragraphs 1 through 118 of this complaint into this section as if fully set forth herein.

128.   Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action.

129.   As previously alleged, the wrongs alleged in 42 USC § 1985 includes any conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons … the equal protection of the laws, or of equal privileges and immunities under the laws" and an act in furtherance of the conspiracy is committed by at least one of the conspirators.

130.   The wrongs alleged in 42 USC § 1985 includes any conspiracy for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws.

131. The herein named Defendants (including all Doe Defendants) had actual and constructive knowledge, or through reasonable diligence could have discovered, the expiration of the statute of limitations with respect to counts 1-59 and 61-71prior to Plaintiff's illegal arrest and incarceration, had the power to prevent or aid in preventing the acts which directly and proximately resulted in Plaintiff's illegal arrest and incarceration and neglected or refused to do so.

132. The herein named Defendants (including all Doe Defendants) had actual and/or constructive knowledge, or through reasonable diligence could have discovered, that the Defendants intended to deny or substantially raise the amount required for Plaintiff's bail solely on the basis of his national origin. Further, Defendants had the power to prevent or aid in preventing the acts which directly and proximately resulted in Plaintiff's continued incarceration due to the unreasonably high bail based on the assertion that he was a "flight risk" solely based on his national origin and neglected or refused to do so.

133. Each and every Defendant herein named (including all Doe Defendants) committed acts and/or omissions which enacted and/or ratified polices and/or municipal customs which foreseeably and proximately resulted in Plaintiff's unequal treatment under the law solely based on his national origin.

134. Further, Defendants are alleged to have maintained, and/or participated in a policy permitting the occurrence of the type of wrongs described herein, and based on the principal set forth in <u>Monell vs. New York City Department of Social Services</u> (1978) 436 U.S. 648 and <u>Heller vs. Bushey</u> (9th Cir. 1985) 759 F.2d 1371, are liable for all injuries sustained by Plaintiff. To wit, Defendants knew

or should have known that Defendants' national origin was an unconstitutional basis on which to impose different conditions of eligibility for bail, yet Defendants repeatedly asserted that Plaintiff was a flight risk solely based on his Israeli national origin.

135. Each of the acts of Defendants was carried out without justification, without probable cause, in bad faith, and with the motive to seek retribution against Plaintiff for crimes which he was not guilty of, had not been tried for, and was, in no manner, criminally liable for.

136. In order to carry out the foregoing violation of Plaintiff's constitutional rights, the Defendants undertook series of acts alleged throughout this Complaint.

137. The foregoing conduct of Defendants and statements made in conjunction with that conduct were designed at all times to: deny Plaintiff his right to equal protection under the law, having the effect of ensuring that Plaintiff remained incarcerated for crimes for which he could not legally be convicted because the statute of limitations had long since expired; to ensure that Plaintiff would be prosecuted in the public eye regardless of the outcome of the criminal prosecution so that Plaintiff's reputation would be destroyed; and, to ensure the invasion of his privacy. Notably, Defendants maintained said conduct while a co-defendant remained charged with exactly the same crimes yet was released on her own recognizance.

138. At no time was there probable cause or any good faith belief to believe that Plaintiff was guilty of the alleged criminal charges or that Plaintiff was in any way criminally culpable and, in no event, "more culpable" than his co-defendant Michelle Seward.

139.   The aforementioned acts and omissions of each Defendant was done by each Defendant knowingly, intentionally, willfully, maliciously or with such callous disregard with purpose of harassment, oppression and infliction injury upon the Plaintiff.  This was done with reckless, wanton and callousness of Plaintiff's civil rights and by reason thereof.  Plaintiff claims exemplary and punitive damages from the non-governmental Defendants in a sum to be determined by this Court – but in no case less than $10 Million – to deter, prevent and educate said Defendants from ever inflicting such injuries again upon any individual.

140.   **Judicial Deception -- statute of limitations and the arrest warrant:** As separate and equivalent cause of liability under this cause of action, Plaintiff alleges that Defendants, and each of them, violated Plaintiff's civil rights under § 1986 by deceiving a judge and/or magistrate through the presentation of deliberate falsehoods, omission of material facts, and/or recklessly disregarding the truth when they averred to and knowingly omitted material information leading to the issuance of a criminal complaint. For example, Plaintiff points to the warrant affidavit omitting the fact that the statute of limitations had run for the charged offenses. The Defendants, and each of them, should have known that the statute of limitations had run on the charged offenses. The omission is "necessary" and "material" to the issuance of the arrest warrant because the presiding magistrate would not have found probable cause to arrest if made aware of the expiration of the statute of limitations. Thus, Defendants, and each of them, did not act in an objectively reasonable manner in omitting relevant information in their application for a warrant and enjoy no

qualified immunity. Furthermore, if the affidavit was supplemented with the omitted fact that the statute of limitations had run, there would have been no probable cause to arrest Plaintiff.

141. **Judicial Deception -- culpability at bail hearing:** As separate and equivalent cause of liability under this cause of action, Plaintiff alleges that Defendants, and each of them, violated Plaintiff's civil rights under § 1986 by deceiving a judge and/or magistrate through the presentation of deliberate falsehoods, omission of material facts, and/or recklessly disregarding the truth when they deliberately misrepresented facts at Plaintiff's bail hearing. For example, Defendants, and each of them – having a duty of candor to the court[5] –knew or should have known that the investigative material indicated that Michelle Seward was the more culpable of the two co-defendants but maintained the contrary. Thus, Defendants, and each of them, did not act in an objectively reasonable manner in omitting relevant information in their application for bail and enjoy no qualified immunity. Furthermore, if the bail hearing was supplemented with the omitted fact that Michelle Seward was clearly the more culpable co-defendant, there would still be no cause to hold Plaintiff to a higher bail than Ms. Seward.

142. **Judicial Deception -- statute of limitations and the preliminary hearing:** As separate and equivalent cause of liability under this cause of action, Plaintiff alleges that Defendants, and each of them, violated Plaintiff's civil rights under § 1986 by deceiving a judge and/or magistrate through the presentation of deliberate falsehoods, omission

---

[5] See California Rule of Professional Conduct 5-200 and California Business and Professions Code 6068(d).

of material facts, and/or recklessly disregarding the truth when they averred to and knowingly omitted material information at the preliminary hearing. For example, Plaintiff points to the omission of the fact that the statute of limitations had run for the charged offenses at the preliminary hearing. The Defendants, and each of them, should have known that the statute of limitations had run on the charged offenses. The omission is "necessary" and "material" to the continuation of the preliminary hearing (which lasted five weeks while Plaintiff was incarcerated) because the presiding judge would not have continued with the preliminary hearing if made aware of the expiration of the statute of limitations. Thus, Defendants, and each of them, did not act in an objectively reasonable manner in omitting relevant information in their presentation of evidence at the preliminary hearing and enjoy no qualified immunity.

143. By reason of the aforementioned acts and omissions of Defendants, and each of them, Plaintiff retained attorneys to represent them and did incur and continue to incur investigation costs, expenses, attorneys' fees, ad legal costs. Plaintiff requests payments by Defendants, and each of the, for compensation of fees and costs pursuant to Title 42 U.S.C. § 1988.

**E. FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS: 42 USC § 1988 (Recovery of Attorney's Fees in Vindication of Civil Rights)**

144. Plaintiff refers to and incorporate by reference each and every allegation contained in paragraphs 1 through 143 of this complaint into this section as if fully set forth herein.

145.   42 USC § 1988 provides, in relevant part, "In any action or proceeding to enforce a provision of sections … <u>1983</u>, <u>1985</u>, and <u>1986</u> of this title, … the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs …."

146.   Plaintiff by and through this complaint brings an action to enforce provisions of 42 USC §§1983, 1986, and 1986.

147.   If any Defendant named herein is found liable for any or all of the causes of action herein alleged, Plaintiff shall be "prevailing party" as that term is intended under 42 USC §1988 and as such shall be entitled to, and demands, reasonable attorneys' fees as part of any award of costs and/or damages.

# <u>V</u>
## <u>PRAYER</u>

WHEREFORE, PLAINTIFF DROR SOREF PRAYS FOR JUDGMENT ON ALL CAUSES OF ACTIONS AGAINST THE DEFENDANTS, AND EACH OF THEM, AS FOLLOWS:

1.   For general damages in an amount according to proof;

2.   For medical expenses in an amount according to proof;

3.   For loss of earnings and earning capacity, according to proof;

4.   For punitive damages in an amount appropriate to punish only the individual Defendantsfor their wrongful conduct and as an example for others, in an amount this Honorable Court deems appropriate, but in an amount not less than $10 million dollars per violation;

5.   For reasonable attorneys' fees pursuant to Title 42 of the United State Code, Section 1988(b).

6.      For costs of suit herein incurred;

7.      For pre and post judgment interest as allowed by law; and

8.      For such other and further relief as the court deems just and proper.

Dated:  August 8, 2017              LAW OFFICES OF ETAN Z. LORANT

By: _____

ETAN Z. LORANT, Attorney for Plaintiff

Dated:  August 8, 2017              D. SHAWN BURKLEY, Attorney-at-Law

By: _____

D. SHAWN BURKLEY, Attorney for Plaintiff

## **DEMAND FOR JURY TRIAL**

The Plaintiff in the above entitled action request a trial by jury pursuant to Rule 38(a) of the Federal Rules of Civil Procedure

Dated:  August 8, 2017              LAW OFFICES OF ETAN Z. LORANT

By:_____

ETAN Z. LORANT, Attorney for Plaintiff

Dated:  August 8, 2017              D. SHAWN BURKLEY, Attorney-at-Law

By: _____

D. SHAWN BURKLEY, Attorney for Plaintiff

Complaint for Damages